Roesinger v. Pohanka of Salisbury, Inc. We have counsel here? Okay Whenever you're ready, Mr. Cockey. May it please the court, I am Robin Cockey. I'm counsel for Ms. Roesinger, the appellant. She is present in the courtroom this morning. This appeal brings before you all the decision of the district court dismissing all of Ms. Roesinger's claims on summary judgment. The district court's decision is wrong in two important respects. First, because the court took undisputed evidence of actionable workplace abuse and inexcusably wrote it off as mere inoffensive, well offensive, but ultimately merely discourteous conduct. And secondly the district court took this profane command, sit the F down, and again inexcusably reinterpreted it as a neutral reasonable request such that compliance would warrant termination. What if it was unreasonable, but it was not gender-oriented? What if it was an unreasonable request? An employer makes an unreasonable request of an employee unrelated to the statute and says if you don't do it, I'm gonna fire you. Right. And she refused to do it and walked out and told her, told her boyfriend, I've been fired. Right, well the issue is whether or not a reasonable trier of fact could infer pretext from this scenario, and I don't really contend that sit-the-F-down was gender-oriented. I contend that it was provocative. If I say sit down, that's a facially neutral request. It doesn't call for any second-guessing. But if I raise my voice and I shout sit the F down, I've moved into a challenge, into a provocation. Not only a challenge, it's probably unreasonable, but my question to you is even though it's unreasonable and it's a challenge and it's ungentlemanly, he said if you don't sit down, I'm gonna fire you. Right. And she agrees in her testimony that that's what was said. And she still insisted on not sitting down. Instead, she walked out of the room. Right, as any reasonable person would do. No, it's an unreasonable business thing. But the question is does that violate the statute? It does because the issue under the statute, under the, you know, the McDonnell-Douglas paradigm, is whether or not a reasonable juror could take that scenario and from it infer that this sit-the-F-down challenge was pretextual. That it was actually, in my view, entrapment because it wasn't, on its face, designed to secure compliance. It was designed to goad Ms. Roessinger into doing something that could serve as the basis for her termination. Because sit-down is a request seeking compliance. Sit-the-F-down is a challenge seeking defiance and it is facially suspect and the district court erred in ignoring what I think is respectfully obvious that that wasn't a request. It was a goad. It was a provocation. It was a challenge. It was even worse than that. It was a challenge. It was very rude, but it said if you don't do it, I'm firing you. Right, exactly. So, and she didn't do it and he fired her. Precisely. It was pretextual because it was a trap. It was the boss towering. How about, help me, help me understand. So the move you just made there that I'm having trouble with is you said that it it was entrapment and therefore was pretext, right? So, so I'm not sure, I'm not sure entrapment is part of the story here, but why is, you know, the statute here is not like a code of conduct, right? This is not like an etiquette story. Correct. But what I'm having trouble understanding is on what basis we would conclude that that you know, inappropriate statement is pretext for firing her for gender. Right, I mean. Pretext for firing her for complaining, your honor. Or complaining about her gender. Because you have tight synchronicity. So she complains to Megan Fitzgerald September 18th, September 24th. Except the, that meeting, let's get to that meeting. That meeting was a complaint by Burrs who said she refused to take a ticket. Right. So he told Bowens, Bowens called her in and said, you're causing a problem and started yelling at her. Right. And so the question is, then he says sit, sit down, you know. He didn't say sit down. Yeah, and, and she refused and then he says sit down again, and if you don't sit down, I'm gonna fire you. Right. And so, of course, she later test, in her affidavit, she said if you leave the room I'll fire you. And so she did that too. But regardless, she acknowledged that was the conversation and it arose out of her refusal to take a ticket, a service ticket. Well, and actually it arose from her male counterpart's refusal to take the ticket, which was then passed to her, and she then refused. So it's a double standard. But Bowens, just a minute, just Bowens got the information from Burrs that she refused to take a ticket and he called her in and said you're a problem and then he said you're, and he told her to sit down. So that's the context of this conversation. Not quite, Your Honor, because what he said to her, she said the problem is that they get to skip tickets and then I skip a ticket. I'm talking about the incident at that point. At that point, that's what she said and he responded, as Your Honor accurately quoted, that's not the problem. You're the problem. And when she started to remonstrate, he shouted, sit the F down. And my point in response to Judge Richardson's question is this, that the issue under the burden shifting paradigm is whether or not a juror could say, well, this is a setup. This isn't genuine. He isn't actually firing her because she won't sit down. He's setting her up to be fired because he's fed up with her complaints. He just said you're the problem. And the reason I think that a juror could conclude that is because of the distinction, a crucial distinction, between saying conversationally, please sit down, versus shouting sit the F down, which moves from a request seeking compliance to a challenge, a provocation, a throwing down of the gauntlet. The problem is, in these cases, we often have people who cannot get along for various reasons. People in a workplace disagree with each other because of a personality problem or because they think one person's work is poor. And the person may also feel like they've been slighted because of their gender or because of their race. And we have to look at the evidence and determine, is there a dispute, a material fact, about whether it was actually based on gender? And so we have to be able to distinguish between he thought she was a problem because her work is poor. He thought she was a problem because she complains. Versus he thought she was a problem and fired her because she's a woman or because she complained that she was being mistreated for being a woman. I don't contend. How do we do that? On this record, easily. I don't contend that he fired her because she's a woman. I contend he fired her because, as he put it, she was a problem. She had just complained and her complaint was objective. Why is the problem the complaint? Pardon me? But what you said that she was a problem because she complained. A juror could conclude that based on what he said. I mean, it's If you're the problem, sit the F down and then said, oh, if you leave, you're fired. And she leaves because she said, well, I think we should have this discussion when we're a little calmer. So a juror could quite reasonably conclude, in fact, I think ought to conclude, that that wasn't him simply addressing an HR issue with an employee. He was setting her up for exactly what happened. And that is the very definition of pretext. It is firing somebody for a reason that isn't real, that is actually covering up the real reason. And when you move from rational, appropriately delivered requests, like sit down, into the world of challenge and provocation, then you and you get what you are goading the employee into. A juror could conclude that that is what it appears to be. That he wasn't really trying to have a conversation with her. He was trying to provoke her into doing what I would have done, which any self-respecting person would have done, which is sit down. I'm not going to tolerate this. I'll come back, and we can have a rational discussion. And my point in response to Judge Rushing's question would be this. The underlying gender discrimination is undisputed. She claimed that she was subjected to an offensive, hostile workplace environment, and it is absolutely indisputable that she was. We all agree that judges aren't etiquette cops, but we can also all agree that an employer shouldn't call his employee a cunt, because it's not merely impolite. It is sexist abuse of the most degrading, because it utterly equates a woman to her private parts. It is undisputed that that happened repeatedly in this case. We can also all agree that when a female employee goes to HR and says they're treating me worse than the guys, that the HR director shouldn't say, well, you just need to put on your big-girl panties, because that's not merely rude. It belittles the employee based upon her gender, and that's sexism and it's actionable abuse. We can also all agree that the boss shouldn't be saying, well, you just, what is this, like your first big-girl job? That's not merely patronizing. Again, that's devaluing a woman because she is a woman. He wouldn't say that. So is your only evidence of pretext that you're relying on today the inflammatory aspect of the sit-down command, or is there other evidence of pretext? A little more, but it's all within the confines of this climactic confrontation. What is your other evidence of pretext? I want to make sure I don't miss it. I will try and sort of script it. It went like this. So she is in a situation in the workplace where she says the guys get to pass over lucrative tickets, but I don't, so I get stuck with the oil changes and the tire rotations. So it happens again, and she refuses to take the ticket. So as Judge Niemeyer pointed out, she's immediately reported to the boss who hauls her in, and she starts in saying, well, you know, this is what I'm complaining about. This is what I've been trying to tell you about, and he interrupts her and he shouts, that's not the problem. You are the problem. And remember, this follows upon her complaints by a matter of weeks. So it is of a piece with her, you know, sort of status as the complainer in the office. And so she then tries to have a discussion with him, and he doesn't say sit down. He doesn't say sit down, and oh, by the way, if you leave, you're fired. He shouts, sit the F down, and when she says, well, I think we need to have this discussion when we're a little calmer, he says, if you leave, you're fired. Well, I would say to tell somebody they're fired over something inconsequential, like leaving the room and come back to have the discussion with everybody's calmer, in and of itself suggests that there's more going on than just logistics about meetings. But the fact that... We say that all the time. We have many cases where an employee refuses to sign a document saying I've been insubordinate. And they say if you don't sign it, you're fired. So I just I'm trying to find out to make sure we nail down before this argument's over what your evidence of pretext is because it wasn't perfectly clear to me, and it sounds like it is the nature of the statement and the sort of context of the conversation. I would agree, Your Honor, and again, the reason is that the reasonable person would comply with. So that raises the question, it begs the question, of was the challenge issued? Your point turns on that, right? That we would have to find that no reasonable person would respond. So if I, you know, if I looked at my law clerk and I was like, get the F in here, right? They're supposed to walk out? Well... Right? Because no self-respecting person would come in my office if I said, get the F in here or sit the F down. Like my use of profanity is, I mean, you know, it's almost like, you know, this is a different time, right? Some people, I don't approve of it, but some people use profanity like more regularly than they ought to, right? But we don't necessarily say that just because I use profanity with one of my law clerks that they're supposed to literally get up and walk out. Now, they're entitled to get up and walk out if they want to, right? But they got to accept the consequences that come with it. We don't necessarily say that, and we don't necessarily deny that. It's a classic factual dispute. Some jurors would say, well, the law clerk needs to pay his rent, so he should just suck it up. Other jurors would say, well, Judge Richardson must have known that a lot of people would regard that not as a request or an order, but as an insult, an insufferable insult. So if Judge Richardson does that, he's a It doesn't prohibit insults. It prohibits pretextual terminations, and if you issue a command... An insult is a real insult. It was intended to be an insult. He was upset with her, and he called her in, and he was, his temperature was up, and he was upset with her, and he says, sit the F down. Right. And she refuses. Now, why wouldn't she just sit down? Well, I wouldn't. I mean, if he said sit down... No, you'd get fired too. Well, I probably would. I wouldn't. I never would have made it through the first year. That's exactly the point. You, too, would get fired, and yet you were neither a woman, nor would you have complained about being a woman that was being discriminated against. But the point is, you both would have been fired. Right, because... Because you both refused to do what you were told to do. Respectfully, no, because we both complained. See, I don't contend that she got fired, you know, because she was a woman. I contend she got fired because she complained about sexist mistreatment in the workplace, and I think that the debate that we're having illustrates my point, respectfully, which is that, you know, if you have a disagreement about facts, and you have a disagreement about interpretation, some people might go to the left, some people might go to the right, some down the middle... So why don't we hear the rest of that on the rebuttal? Thank you, Your Honor. Yes, sir. Mr. Rommel. Thank you, Your Honor. May it please the Court, my name is Luke Rommel. I represent Appellee Cahenco of Salisbury, Inc. The focus points of my argument will be twofold to start. To focus on the issue of causation, and secondly to focus on the issue of hostile work environment. I noticed that after our briefs were filed in this case, this court has published an opinion titled Laurent Workman vs. Wormuth 54 F 4th 201 from November of last year, which deals with hostile work environment, albeit related to race as opposed to gender in this place, but I believe that that case does represent an appropriate framework for considering whether this case rises to the level based on the facts that will accept for purposes of this argument that everything said from a factual standpoint by appellant is true. Assuming that to be true, does it rise to the level of severe and pervasive as defined by this court very recently in this Laurent Workman case? Backtracking to the issue of causation, I think that there's, I take slight issue with the factual representation made by appellant with the, I guess we'll call it, the critical meeting with Mr. Bowen. Appellant, by her own admission, threw her hands up and said, I'm leaving. She sets forth that in the record JA064. To quote her, once Mr. Bowen said, you are the problem, she says, I threw my hands up and just kind of walked away. At which point, assuming appellant's factual renditions are true, Mr. Bowen said, sit the F down or words to some similar effect that appellant considers to be inappropriate. The critical missing link is that any conduct taken by Mr. Bowen thereafter, an employee saying, I just kind of walked away, that any conduct that he undertook is related to some impermissible factor under Title 7. So asking the question rhetorically, if it were a man in that meeting who said to Mr. Bowen, I'm getting up. I can't take this anymore. I'm going to call my significant other. And Mr. Bowen says, for purposes of argument, arguendo, sit the F down, sir. If you don't do that, then you're fired. If the mail gets up, Mr. Bowen's taking issue not with the fact that the person's a male, but he's taking issue with the fact that the employee disobeyed his order, reasonably or unreasonably. It doesn't matter. Reasonably or unreasonably. He's breaking Mr. Bowen's imposed rule and because he broke the rule, he's fired. Appellant points to nothing in the record or elsewhere that gets appellant any closer to causation than my hypothetical. No, right, so that doesn't seem like, I mean, nothing seems like a strong word there, right? Because the allegation here is that you are the problem, the plaintiff interprets that to mean you're complaining is the problem, right? But that's the move that they're making because then it's not about being a woman, right? That's a problem. He's not saying you're a problem because you're a woman. What the plaintiff wants to suggest is that that plays as you're a problem because you're a complainer. I'm not sure that that's the right way to read it, but and then doesn't that create some suggestion that this is really all about sort of retaliation for her complaining, not about being a woman or anything else? I don't take them to be arguing. I think you're fighting a straw man. They're not saying that that this was about her being a woman. This is about her complaining, no? I think I understand your honor's question and as alluded to by your honor earlier there's no prohibition against an uncivil work environment. It's not a prohibition or a code of conduct. That's the uncali precedent, United States Supreme Court, where Justice Scalia says this is not a civility code. Going back earlier, I think cited by Judge Bennett, Harris forklift. So we have a work atmosphere that is less than harmonious. Mr. Bowen says we're gonna settle this once and for all. During that meeting there's no reference to complaints because appellant's a woman. That does not come up. She says something to the effect of the tenor, the undercurrent there, is I'm treating unfairly. I'm not getting the work that I think I should get. I'm getting less sophisticated, less well-paying jobs. It's unfair. That's as far as it goes with Mr. Bowen. Any gender-related complaint was not made to Mr. Bowen. It's made to someone else, albeit in a way that I think is, we could all agree, is somewhat inchoate. Make a difference. I think their argument, to be fair, is that she's complaining she's not getting the tickets because she's a woman. That's her claim. I don't know that I would agree with that assessment of her discussion with Mr. Bowen. Well, that may be, but I, it depends how far back you go, but I think her sense of it is that she is not getting the tickets because she's a woman. The fellow employees are treating her differently because she's a woman, and she's complaining about that. And that's her argument, I think. I think it is, too. My response to that would be twofold. First of all, I think it's well within the boundaries of what this court and others have determined to be conclusory or speculative allegations. These do not suffice to defeat summary judgment, where if the appellant has a subjective belief and says, I look out and I see all of these men and I believe that they're treated favorably, I'm treated infavorably. Why am I treated in favorably? It necessarily must because I'm a woman. I'm not getting something that they're getting or I'm getting something that I don't like that they're not getting. I don't know that there's any evidence in the record that takes that subjective belief and inserts any fact, disputed, undisputed, otherwise, and gets to adverse action because she's a woman. I don't think that we get there. I don't think that's been identified by the name-calling, right? I mean it, you know, again, it's not a civility code, right? But the name-calling is not nothing. It's not, right? I mean, it's gender-specific, right? I mean, it is, and the couple things I'd like to note, and in making this annotation, by no means condoning the use of the word, it's not name-calling in a linear speaker-to-recipient way that you would see in most Title VII cases, including the very recent Laurent Workman case, where you have the speakers saying to the recipient something, and Laurent is race-based. In this case, the allegation is gender-based. The speaker, Mr. Burrs, says it to a group of guys, presumably outside the presence of appellant. Appellant then catches wind of this through the confines of the workplace and interprets the statement, rightfully so, as inappropriate. Why does that subtle distinction matter? It matters because it goes really to the severe component of severe and pervasive. It numbs the severity, albeit slightly, and it does not rise to the... Is there evidence that Mr. Bowen knew that? I don't know. It's certainly not in the record attributed to anything Mr. Bowen knew that. He knew that there was trouble with Mr. Burrs, and he makes the comment... I guess what I was looking at is her declaration, paragraph 20, and where she says she brought a list and addressed them with Mr. Bowen, and one of them, you know, dot six, maybe, whatever, suggests that she told Mr. Bowen that someone had told her that she was acting like a C. All right, let's assume that happened, which I think we fairly should do, right, for purposes of these proceedings. The Laurent Workman case says gender-specific profanity, in and of itself, is not sufficient, in and of itself, to violate any prohibitions in Title VII. So it has to be, I would go back to the causation, is let's assume the statement was made, let's assume that there's a gender-specific component to it, let's assume it's directed to appellant. There still has to be either an adverse action taken because of it, or it's sufficiently severe and pervasive as to make the workplace intolerable. You know, so I get that, right, so that's the hostile work environment. What I'm trying to get at is, to what extent, in your view, is that relevant to the pretext question, right, because I take plaintiff's argument separate from the hostile work environment to say, listen, when we evaluate whether, you know, her failure to comply with the command is pretextual, we got to look at the context, right, about all the complaints that she's been making that are gender-specific. Right, I think that there's two things that are important here. First of all, is Mr. Bowen did not bring appellant into that meeting with the desire to terminate her, according to him. Now, I understand that the appellant is saying she was sort of set up to fail in that meeting, but his first comment was that he wants to work things out. So on its face, that cuts against the current of any sort of pretext, right. His last statement there is that he did not file or complete the termination paperwork until the following day, and Mr. Bowen's reason for that is that he's saying a lot of times things get hot, the temperature rises, somebody says something or does something unreasonable, cools down, the temperature lowers, and comes back and we work things out. And that's in the record. That's his statement in his deposition. So he says it wasn't until the next day that he fills out the termination paper because Ms. Rosinger left as she had done before, and this time she didn't come back. So to say that there's any sort of pretextual component to that I think would be inconsistent with the record. Let me ask you this. Let's assume you can you're right about the meeting and the firing. How about her allegations about the hostile work environment and the allegation that that basically diminished her meaningful participation in the workplace and getting good tickets and so forth? Is that a separate claim that she can make under Harris? I don't think it rises to the level of severe and pervasive. I think that at best... Well, that's your argument, right? Right. That would be my... based on the... How about the restroom incident? What do you think about that? It's not noble to engage in conduct of that nature. Assuming that it happened, I don't know that there's anything that's gender specific as relates to appellant that you would say... She interpreted it as that way because it was the women's bathroom and not the men's. I think it would be more consistent with the conduct of behavior outlined by Justice Scalia somewhere near the end of the United States Supreme Court in Noncali. We're saying it's crude, it's coarse, it's it's boorish. I think is the word that's used by the justice, but it's... Is it attributable to the employer? That's a that's a good question. You know, we have case law saying that if the employer takes responsive action that solves the problem, then the conduct is not attributable to the employer. And in her affidavit or her declaration, the plaintiff says, I complained about this and so they locked the restroom door so that the men couldn't use it. She complains that it made it more difficult for her to use. She had to go get a key when she needed to use the restroom, but it made me wonder if if your position was that that is responsive action that means that the bathroom behavior is not attributable to the employer for hostile work environment. I think the response is reasonable to answer that question and in light of your Honor's question, I would agree. All right. Thank you. The criterion isn't severe and pervasive. It's severe or pervasive. The controlling case is this court's en banc ruling in the Boyer-Liberto case in 2015 wherein you all said that a single instance of calling an African-American employee a porch monkey met the severe prong of the test and would support her claim for a hostile workplace environment and also since she got fired promptly after complaining, would also support a retaliatory firing claim. And in this case, you have both severity because we can all agree that cunt is probably the worst thing you can call a woman, and you have pervasive because she went into this meeting with Bowen with her list and on the list as Judge Richardson pointed out in the guys, she was told to stop acting like a cunt. And so Bowen sort of wagged his finger at Burrs, said don't do this anymore. Burrs then goes out into the front room and tells everybody... I didn't say that at all, right? So help me. Okay, I mean you rewrite it, right? You said every time she complained she was told that she was acting like a cunt. Like that's literally not what it says. Well, it says that she complained that... You're trying to say that that supports the pervasive... Because she said in her meeting with Mr. Bowen that when she complained she was told that she was acting like a cunt and then after... In the singular, right? She says I had to try to raise some of these issues directly and they responded by saying I was acting like a cunt. Right. And so, but and you just said that she said every time she raised this they responded by saying she was acting like a cunt. It's like totally different than what the record says. Well, I don't mean... It's a singular instance. Well, let's assume it happened once and then it happened a second time. I'm just want to make sure I understand what you're representing to us the record is. Right. Well, the record is the declaration that your honor just quoted from plus her deposition testimony on the meeting which appears at pages, I think 50 to 54, which makes it clear, I think, that she complained to Mr. Bowen that when she had cited these problems she was told that she was acting like a cunt and then after the meeting Mr. Burrs promptly went out into the storeroom, into the front office and said that Diana snitched me out and she's acting like a cunt. So if it only happened twice, that's in my view pervasive. It's certainly in my view severe if it only happens once because it shouldn't happen at all because it is the vilest insult that can be made to a woman and I point respectfully is that these are not disputed contentions. There's no countervailing evidence in the record. So it is a matter of uncontradicted evidence that she was subjected to actionable workplace abuse that would fully support. I thought after the meeting where she raised that Bowen's then called in Burrs and directed him not to do that anymore and thought he had taken corrective action. Right and then Burrs went out and yeah, I know but that's we're talking about the decision-maker. Right and then she so that's the what he then said someplace else out of her presence is hardly what is imputable to Bowen. Well Burrs is a boss so it's imputable to Pohanga. The decision-maker was Bowen. Right, but the she complained to Mr. Bowen about what he had said and Bowen said something like I think he said it's no big deal I'll take care of it or words to that effect. But that was I guess what a month six weeks before she was fired and again in this final showdown with Mr. Bowen, Mr. Bowen said you're the problem.  She left. He then wrote her up for insubordination and said that the reason he fired her was because she left the room. So is that the real reason? I don't know. Could a reasonable juror conclude that it wasn't? Certainly under the circumstances. So I would respectfully request that this court reverse the district court on both points on the environment. Certainly, Your Honor. If we were to conclude that she was fired, the real reason that she was fired was because she didn't respond affirmatively to Mr. Bowen's command at that meeting. Does that, would that end your case? No, Your Honor, because as you pointed out in your colloquy with Mr. Rommel, we also have our hostile workplace environment claim. And what is the adverse action, employment action, that was taken? Well, she was subjected to the abuse which was sufficient to alter the terms and conditions of her employment. She complained they addressed it both times. They want the name-calling and the bathroom incident. They addressed both those. Well, respectfully, I don't think they did. I think that the record is disputed on that point. Denied the men access to the bathroom, right? Well, but as Judge Rushing pointed out, it also made it a burden for her. Is that adequate? But that was a security measure. That was intended to help her. Right. Well, that's an arguable point. But why is it arguable? Well, because if you are correcting misconduct in a way that burdens the victim, that's arguably not corrective action. And certainly, it's undisputed that management did nothing to stop the name-calling and, in fact, indulged in it. I thought they did. I thought they told Burrs it's unacceptable. Well, Burrs is part of management. Burrs was... He was called in and disciplined by Bowen. He wasn't disciplined. He was told not to do it anymore. That's a form of discipline, isn't it? I don't know. Well, look, the question is the decision-maker was Bowen's, and I'm trying to find out the nature of your claim. Right. Well, the causation and the, and you're suggesting that the hostile work environment claim has adverse action independent from the firing. I think that's true. And I'm, my comment was the two incidents you pointed out, the name-calling and the bathroom, were both addressed by management. Well, the, again, respectfully, I don't believe that the response to the bathroom was legally sufficient, and I don't believe that the response to the name-calling was sufficient in any sense, legal or pragmatic, because obviously... There's no evidence in the record that she was called that afterwards. Well, Mr. Bowen called Mr. Burrs in. Mr. Burrs then goes out, continues the name-calling. Bowen says he's going to take care of it, but there's no evidence that he does. Plus, Mr. Burr's comments are attributable to management, because he's a part of management. Okay. Thank you, your honor. Thank you, Mr. Kaki. We'll... You okay? All right, we're going to continue. We'll come down and greet counsel and continue on the next case.
judges: Paul V. Niemeyer, Julius N. Richardson, Allison J. Rushing